United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MELISSA NICOLE GORDON,

Plaintiff,

v.

SSA (INTERESTED PARTY / NEF), et al.,

Defendants.

Case No.  23-cv-02795-DMR

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 19, 25

Plaintiff Melissa G. moves for summary judgment to reverse the Commissioner of the Social Security Administration's (the "Commissioner's") final administrative decision, which found Plaintiff not disabled and therefore denied her application for benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 et seq.  The Commissioner cross-moves to affirm. For the reasons stated below, the court grants Plaintiff's summary judgment motion and denies the Commissioner's cross-motion.

I.    **PROCEDURAL HISTORY**

Plaintiff filed an application for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits on January 3, 2020, alleging disability beginning January 20, 2020.  Administrative Record ("AR") 256-270.  The application was initially denied on September 24, 2020 and again on reconsideration on February 1, 2021.  An Administrative Law Judge ("ALJ") held a telephonic hearing on April 7, 2022 and issued an unfavorable decision on May 2, 2022.  AR 15-28.  The ALJ determined that Plaintiff has the following severe impairments: benign brain tumor, migraine headaches, major depressive disorder, and generalized anxiety disorder.  AR 18.  The ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  AR 18-20.  The ALJ found that Plaintiff retains the

following residual functional capacity ("RFC"):

> [She can] perform medium work as defined in 20 CFR [§] 404.1567(c) and 416.967(c) except she can never climb ladders, ropes, or scaffolds; the claimant can frequently climb ramps and/or stairs, balance, stoop, kneel, crouch, and/or crawl; she should avoid all exposure to unprotected heights and avoid concentrated exposure to dangerous moving machinery (for example, factory-type machinery with an unshielded blade); the claimant should avoid concentrated exposure to extremely bright lighting, for example, lighting with the intensity level of bright theater spotlight or a brightly lit football stadium; she can work in an environment with a moderate noise level (for example, somewhere with the noise intensity level of a business office, grocery store, department store, or somewhere with light traffic noise); the claimant can perform simple, routine tasks and make simple work-related decisions with no fast-paced production work, that is, no hourly quotas; she can tolerate brief and intermittent interaction with the general public; the claimant can tolerate occasional interaction with co-workers but cannot perform tandem tasks; and she can tolerate occasional interaction with supervisors.

AR 20-21.

Relying on the opinion of a vocational expert ("V.E.") who testified that an individual with such an RFC could perform other jobs existing in the economy, including laundry worker, linen room attendant, routing clerk, folding machine operator, final assembler, and document preparer, the ALJ concluded that Plaintiff is not disabled.

After the Appeals Council denied review, Plaintiff sought review in this court pursuant to 42 U.S.C. § 405(g).  [Docket No. 1.]

## II.    ISSUES FOR REVIEW

1.    Did the ALJ fail to consider Plaintiff's headache disorder under listing 11.02?

2.    Did the ALJ err in its credibility determination?

3.    Did the ALJ improperly weigh the medical opinions?

## III.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.  "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole."  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the

record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a mere scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## IV.    DISCUSSION

### A.    The ALJ's Listing Analysis

Plaintiff argues that the ALJ erred in determining that Plaintiff's impairments are not of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Specifically, Plaintiff argues that the ALJ improperly applied Social Security Ruling (SSR) 19-4p. *See Soc. Sec. Ruling, SSR 19-4p; Titles II & XVI: Evaluating Cases Involving Primary Headache Disorders*, SSR 19-4P, 2019 WL 4169635 (S.S.A. Aug. 26, 2019).

#### 1.    Legal Standard

The Listing of Impairments describes specific impairments "which are considered severe enough to prevent a person from doing any gainful activity." *See* 20 C.F.R. § 404.1525. If a claimant meets or equals a listed impairment, she will be found disabled without further inquiry. *See* 20 C.F.R. § 404.1520(d). The plaintiff "bears the burden of proving that . . . she has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). "To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a

United States District Court
Northern District of California

1    claimant's impairment is *not* listed, then to the listed impairment 'most like' the claimant's

2    impairment." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999) (emphasis in original); 20

3    C.F.R. § 404.1526.

4         Migraines are not a listed impairment.  However, SSR 19-4p states that "a person with a

5    primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing

6    11.02 (paragraph B or D for dyscognitive seizures)."  2019 WL 4169635, *7.  To evaluate whether

7    a primary headache disorder is equal in severity and duration to Listing 11.02B, the ALJ should

8    consider:

9         a detailed description from an AMS of a typical headache event,
          including all associated phenomena (for example, premonitory
10        symptoms, aura, duration, intensity, and accompanying symptoms);
          the frequency of headache events; adherence to prescribed treatment;
11        side effects of treatment (for example, many medications used for
          treating a primary headache disorder can produce drowsiness,
12        confusion, or inattention); and limitations in functioning that may be
          associated with the primary headache disorder or effects of its
13        treatment, such as interference with activity during the day (for
          example, the need for a darkened and quiet room, having to lie down
14        without moving, a sleep disturbance that affects daytime activities, or
          other related needs and limitations).

15   *Id.*  The evaluation for Listing 11.02D considers the same factors, but also includes "whether the

16   overall effects of the primary headache disorder on functioning results in marked limitation in:

17   physical functioning; understanding, remembering, or applying information; interacting with

18   others; concentrating, persisting, or maintaining pace; or adapting or managing oneself."  *Id.*

19        **2.    Analysis**

20        The ALJ's application of SSR 19-4p is not a model of clarity.  First, the ALJ found without

21   elaboration that Plaintiff's migraine headaches are a medically determinable impairment which

22   significantly limits her ability to perform basic work activities.  AR 18.  Then, the ALJ found that

23   Plaintiff does not have an impairment which meets or medically equals the severity of a listed

24   impairment; but the ALJ did not consider Listing 11.02 or SSR 19-4p in the analysis at all.  AR

25   18-20.  And then, in the middle of evaluating Plaintiff's credibility and residual functional

26   capacity, the ALJ finally turned to SSR 19-4p.  AR 22-24.  However, the ALJ applied the factors

27   used to determine if a primary headache disorder is a medically determinable impairment (a

28

United States District Court
Northern District of California

4

diagnosis from an acceptable medical source; a third-party observation of a typical headache event; laboratory test findings; and responses to treatment).  AR 22-23; *see* SSR 19-4p, 2019 WL 4169635, \*6.  The ALJ did not explicitly consider whether Plaintiff's migraines may be medically equivalent to Listing 11.02 under the SSR 19-4p factors.

"It is unnecessary to require the Secretary, as a matter of law, to state why a claimant failed to satisfy every different section of the listing of impairments."  *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990).  The ALJ only has to make an "adequate statement of the 'foundations on which the ultimate factual conclusions are based.'"  *Id.*  However, when the "Court simply cannot determine from the ALJ's opinion how" the ALJ made the listing determination, the "ALJ's recitation of the evidence does not provide an adequate foundation for" the ALJ's finding that the listing was not met.  *Santiago v. Barnhart*, 278 F. Supp. 2d. 1049, 1058 (N.D. Cal. 2003).  Out of an abundance of caution, the court interprets the ALJ's application of SSR 19-4p as an analysis of whether Plaintiff's headache condition medically equals Listing 11.02.

Here, the ALJ states generally that the records "do not reflect that alternative causes [for Plaintiff's headaches] were considered and ruled out"; that the record "does not contain documentation of a typical headache event" from an acceptable medical source or third-party observer; that the record "contains no laboratory test findings"; and that Plaintiff "tried multiple medications, but has not tried Botox, anticonvulsants and/or antidepressants."  AR 23.  This is not an adequate foundation for a finding that Plaintiff's condition does not medically equal Listing 11.02.  The ALJ did not accurately describe the record in stating that alternative causes were not considered and that there were no laboratory test findings.  On January 7, 2020, Plaintiff had an MRI to evaluate whether Plaintiff's migraines were caused by a recurrence of her benign brain tumor.  AR 436.  The neurologist who analyzed the MRI determined that the migraines were likely not caused by a recurrence and were instead "probably muscle contraction in nature associated with cervicalgia."  AR 435.  The neurologist then referred Plaintiff to a psychiatrist for treatment of anxiety and depression.  *Id.*  The record thus clearly indicates that laboratory tests

were made, and an alternative cause (Plaintiff's brain tumor) was considered and ruled out.[1]  To the extent that the ALJ sought an explicit laboratory test finding that Plaintiff experiences migraines, such a test does not exist.  *See Spiteri v. Colvin*, Case No. 3:16-cv-01937-LB, 2016 WL 7425924, at *11 (N.D. Cal. Dec. 23, 2016) ("there is no test for migraine headaches").

The ALJ also erred in considering that Plaintiff has not tried Botox or anticonvulsants for her migraines.  Plaintiff was never prescribed Botox or anticonvulsants, and there is no record that a doctor ever recommended these treatments to her.  SSR 19-4p states: "Medications and other medical interventions are generally tailored to a person's unique symptoms, predicted response, and risk of side effects."  Therefore, the ALJ should simply consider "whether the person's headache symptoms have improved, worsened, or remained stable despite treatment," and whether the treatment causes any side effects.  *See* SSR 19-4p.  The regulation never states that the ALJ should consider whether Plaintiff has tried all possible treatments in a one-size-fits-all scenario.[2]

The court finds that the ALJ erred in its analysis of Listing 11.02.  On remand, the ALJ should follow the guidance of SSR 19-4p in assessing whether Plaintiff's condition medically equals a listing.

### B.    The ALJ's Credibility Determination

Plaintiff argues that the ALJ failed to provide specific, clear or convincing reasons for rejecting Plaintiff's testimony regarding subjective pain or symptoms.

### 1.    Legal Standard

In general, credibility determinations are the province of the ALJ.  "It is the ALJ's role to resolve evidentiary conflicts.  If there is more than one rational interpretation of the evidence, the ALJ's conclusion must be upheld."  *Allen v. Sec'y of Health & Human Servs*., 726 F.2d 1470, 1473 (9th Cir. 1984) (citations omitted).  An ALJ is not "required to believe every allegation of disabling pain" or other nonexertional impairment.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th

---

[1] In fact, SSR 19-4p explicitly states that "physicians may use magnetic resonance imaging (MRI) to rule out other possible causes of headaches—such as a tumor—meaning that an unremarkable MRI is consistent with a primary headache disorder diagnosis."  2019 WL 4169635, *4.

[2] The ALJ also seemed to combine her SSR 19-4p analysis with her credibility determination.  AR 23.  For the reasons discussed below, the ALJ erred in her credibility analysis.

United States District Court
Northern District of California

Cir.1989) (citing 42 U.S.C. § 423(d)(5)(A)).  However, if an ALJ discredits a claimant's subjective symptom testimony, the ALJ must articulate specific reasons for doing so.  *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).  In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "must specifically identify what testimony is credible and what evidence undermines the claimant's complaints."  *Id*. at 972 (quotations omitted); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (stating that an ALJ must articulate reasons that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony").  The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment."  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis.  20 C.F.R. § 404.1529; *Smolen*, 80 F.3d at 1281 (citations omitted).  First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. § 404.1529(b); *Smolen*, 80 F.3d at 1281-82.  Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of" the symptoms.  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) (citation omitted).  Absent affirmative evidence that the claimant is malingering, the ALJ must provide "specific, clear and convincing" reasons for rejecting the claimant's testimony.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The Ninth Circuit has reaffirmed the "specific, clear and convincing" standard applicable to review of an ALJ's decision to reject a claimant's testimony.  *See Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014).

### 2.        Analysis

The ALJ found that Plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity,

United States District Court
Northern District of California

7

1    persistence and limiting effects of these symptoms are not entirely consistent with the medical

2    evidence and other evidence in the record for the reasons explained in this decision."  AR 21.  As

3    the ALJ determined that Plaintiff was not malingering, the ALJ must provide "specific, clear and

4    convincing" reasons for rejecting the claimant's testimony.  "This requires the ALJ to 'specifically

5    identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what

6    evidence undermines that testimony.'"  *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020)

7    (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014)).  "[T]he

8    'clear and convincing' standard requires an ALJ to show his work."  *Smartt v. Kijakazi*, 53 F.4th

9    489, 499 (9th Cir. 2022).  The ALJ failed to do so here.

10        First, the ALJ generally reviewed the medical records and found that they did not

11    corroborate the level of functional limitation alleged by Plaintiff.  AR 22.  The Ninth Circuit has

12    repeatedly held that the ALJ "cannot rely on an *absence* of positive medical evidence to discredit a

13    claimant's subjective symptom testimony."  *Ferguson v. O'Malley*, 95 F.4th 1194, 1201 (9th Cir.

14    2024) (emphasis in original).  "Although an ALJ may use 'inconsistent objective medical evidence

15    in the record to discount subjective symptom testimony,' the ALJ 'cannot effectively render a

16    claimant's subjective symptom testimony superfluous by demanding positive objective medical

17    evidence fully corroborating every allegation within the subjective testimony.'"  *Id.* at 1200 (citing

18    *Smartt*, 53 F.4th at 498).  Here, the ALJ appeared to conflate the credibility analysis with the SSR

19    19-4p analysis and emphasized the lack of medical records corroborating Plaintiff's reports of her

20    symptoms.  AR 22-23.  Not only did the ALJ's SSR 19-4p analysis inaccurately describe the

21    record, as discussed above; it was also improper to include SSR 19-4p as part of the credibility

22    analysis under *Ferguson*.  In addition, "non-specific conclusions that [the claimant's] testimony

23    was inconsistent with her medical treatment" along with a general overview of the claimant's

24    medical history do not constitute specific, clear, and convincing reasons.  *Lambert*, 980 F.3d at

25    1277.  Here, the ALJ summarized Plaintiff's medical records related to her major depressive

26    disorder and generalized anxiety disorder, and then included boilerplate language that her

27    allegations concerning the severity of her mental health impairments were not corroborated by the

28    record.  AR 24.  But the ALJ failed to "identify what parts of [Plaintiff's] testimony were not

United States District Court
Northern District of California

1    credible and why" with regards to her mental health impairments.  *Lambert*, 980 F.3d at 1277

2    (quoting *Treichler*, 775 F.3d at 1103).  The ALJ's overview of Plaintiff's medical record was not

3    clear and convincing.

4         Second, the ALJ found that Plaintiff's testimony of the frequency and severity of her

5    migraines was inconsistent with medical records indicating that her migraines had improved.  AR

6    23.  Progress notes from January 18, 2022 stated that Plaintiff had a chronic headache, but that it

7    was "gradually improving (stable on meds)."  AR 887.  The notes also indicated that Plaintiff is

8    taking Naprosyn and Nortriptyline for her migraines, and that "[p]retty much her migraines ar [sic]

9    under control with same."  AR 888.  Progress notes from March 1, 2022 stated that Plaintiff was

10   negative for "dizziness and headaches."  AR 875.  At the administrative hearing, Plaintiff testified

11   that she did not tell her doctor in January 2022 that her migraines were "pretty well controlled,"

12   but only told her doctor that she was not going to try different medications for her migraines.  AR

13   58.  The ALJ reasoned that if the migraines were "as severe as [Plaintiff] testifies, new treatment

14   options would seem to be most welcome to address her allegedly debilitating pain," and so

15   determined that Plaintiff's descriptions of her symptoms were not credible.  AR 25.

16        The ALJ's reasoning was not clear and convincing.  The ALJ did not explain how the

17   January 2022 progress note stating that Plaintiff's migraines were "gradually improving" and

18   "stable" contradicts Plaintiff's testimony that her medication helps to reduce the severity and

19   frequency of the migraines, but does not prevent them entirely.  AR 55-56, AR 887.  Under Ninth

20   Circuit law, "[i]mpairments that can be controlled effectively by medication are not disabling for

21   the purpose of determining eligibility" for benefits.  *Warre v. Comm'r of Soc. Sec. Admin.,* 439

22   F.3d 1001, 1006 (9th Cir. 2006).  A claimant is not disabled if the "severity of the problem had

23   decreased sufficiently to enable [her] to engage in gainful activity."  *Id.*  But the progress note

24   does not specify, and nowhere else in the record does it indicate, that Plaintiff's migraines were

25   effectively controlled by the medication such that she would be able to "engage in gainful

26   activity."  *See id.*  The ALJ also did not consider the fact that Plaintiff had been taking the

27   medication since at least February 2020, yet the January 2022 progress notes indicated that the

28   migraines were still a "chronic problem" and that Plaintiff was still experiencing pain.  AR 455,

1   887.  Although Plaintiff may have had some improvement with medication, that does not render

2   her testimony of continuing impairment not credible.  The ALJ also mischaracterized the March

3   2022 appointment as a "neurological follow-up," when the progress notes clearly indicate this was

4   just an annual gynecology exam in which the doctor did not discuss Plaintiff's migraines.  AR 23,

5   874.

6        Regarding new treatment options, the Ninth Circuit has held that, in assessing a claimant's

7   credibility, an ALJ may consider "unexplained or inadequately explained failure to seek treatment

8   or to follow a prescribed course of treatment."  *Smolen*, 80 F.3d at 1284.  Based on Plaintiff's brief

9   testimony that she was "not trying to try different medications," the ALJ concluded that other

10  treatment options existed which Plaintiff could have pursued, and Plaintiff did not pursue them

11  because she had exaggerated the severity and frequency of her migraines.  AR 25, 58.  There are

12  no medical records indicating that Plaintiff was offered any other treatment options, or that other

13  treatment options might have been more effective than her current prescription.  For example, the

14  ALJ states that Plaintiff did not try Botox or anticonvulsants to treat her migraines; but there are

15  no records from a doctor recommending that Plaintiff try them, and no indication that Plaintiff was

16  even aware of these options.  AR 23.  The ALJ's belief that other potentially more effective

17  treatment options were available to Plaintiff appears to be speculation.  The ALJ also failed to

18  consider other progress notes indicating that Plaintiff did seek further treatments.  On December

19  14, 2020, Plaintiff sought a referral for a second surgery on her brain tumor because she was not

20  happy with her prior neurologist's diagnosis of her migraines.  AR 434.  The neurologist, Dr. A.

21  K. Bhattacharyya, had simply recommended that Plaintiff "refer to a psychiatrist for treatment of

22  anxiety and depression and . . . avoid the food which has relation with the headache."  AR 435.

23  The ALJ also did not consider progress notes stating that Plaintiff "does not seek help when

24  needed" due to her mental health conditions, and that she is "at-risk of not being able to receive

25  adequate healthcare due to her isolation and irritable behaviors."  AR 378, 750.

26        Third, the ALJ identified inconsistencies in Plaintiff's alleged marijuana use.  At various

27  points throughout 2020 and 2021, Plaintiff stated that she smoked marijuana twice a day, twice a

28  week, two to three times a week, or every day when she could.  AR 25.  She also stated that she

United States District Court
Northern District of California

10

had a medical marijuana card, but there is no valid prescription for marijuana in the record. *Id.* The ALJ concluded that Plaintiff has "difficulty providing accurate descriptions of . . . her efforts to relieve" her symptoms. *Id.* The ALJ failed to explain what this has to do with the frequency and severity of her symptoms. Regardless of how often Plaintiff smokes marijuana and whether she has a valid prescription for it, none of these inconsistencies bear on the intensity, persistence, and limiting effects of her impairments.

Ultimately, "[i]f the ALJ's credibility finding is supported by substantial evidence in the record, [courts] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). But the ALJ's assessment was not supported by substantial evidence. Therefore, the court finds that the ALJ erred in her credibility determination.

### C.   The ALJ's Weighing of the Medical Opinions

Plaintiff contends the ALJ erred in finding the opinion of examining neurologist Edie Glantz, MD persuasive; the opinions of non-examining state agency medical consultants R. Dwyer, MD and A. Cepeda, MD persuasive; the opinion of examining psychologist Katherine Weibe, PhD unpersuasive; and the opinion of treating psychologist Elizabeth Nickels, PsyD unpersuasive.

#### 1.   Legal Standard

Plaintiff filed an application for disability benefits after March 27, 2017. Therefore, the court analyzes the claim under the Social Security Administration's ("SSA") regulations and Social Security Rulings regarding the evaluation of medical opinion evidence that became applicable as of that date. This includes SSR 96-2p, "Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions." *See Rescission of Soc. Sec. Rulings 96-2p, 96-5p, & 06-3p*, SSR 96-2P (S.S.A. Mar. 27, 2017). Under the new regulations, the SSA will no longer give "any specific evidentiary weight, including controlling weight," to medical opinions or prior administrative medical findings, including those from treating physicians. 20 C.F.R. § 404.1520c(a); 20 C.F.R. § 416.920c(a). Instead, the SSA must evaluate the "persuasiveness" of all medical opinions based on several factors, including supportability, consistency, the source's relationship with the claimant, length of the treatment relationship, frequency of examinations,

11

1    purpose of the treatment relationship, whether the source has examined the claimant, any

2    specialization, and other factors, such as "evidence showing a medical source has familiarity with

3    the other evidence in the claim or an understanding of [the SSA's] disability program's policies

4    and evidentiary requirements." 20 C.F.R. 20 C.F.R. § 404.1520c(a), (c), 20 C.F.R. § 416.920c(a),

5    (c). The two most important factors in determining the persuasiveness of medical opinions are

6    consistency and supportability. *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022) (citing 20

7    C.F.R. § 404.1520c(a)); *see also* 20 C.F.R. § 416.920c(a).

8         "Although the regulations eliminate the 'physician hierarchy,' deference to specific

9    medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how

10   [they] considered the medical opinions' and 'how persuasive [they] find all of the medical

11   opinions." *V.W. v. Comm'r of Soc. Sec.*, No. 18-CV-07297-JCS, 2020 WL 1505716, at *14 (N.D.

12   Cal. Mar. 30, 2020). "[A]n ALJ cannot reject an examining or treating doctor's opinion as

13   unsupported or inconsistent without providing an explanation supported by substantial evidence."

14   *Woods*, 32 F.4th at 792. "The agency must 'articulate . . . how persuasive' it finds 'all of the

15   medical opinions' from each doctor or other source, and 'explain how [it] considered the

16   supportability and consistency factors' in reaching these findings. *Id.* (quoting 20 C.F.R. §§

17   404.1520c(b), 404.1520c(b)) (internal citations omitted); *see also* 20 C.F.R. § 416.920c(b)).

18   "Supportability means the extent to which a medical source supports the medical opinion by

19   explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791-92; *see also* 20

20   C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting

21   explanations presented by a medical source are to support his or her medical opinion(s) . . . , the

22   more persuasive the medical opinions . . . will be"). "Consistency means the extent to which a

23   medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical

24   sources in the claim.'" *Woods*, 32 F.4th at 792; *see also* 20 C.F.R. §§ 404.1520c(c)(2) ("The more

25   consistent a medical opinion(s) . . . is with the evidence from other medical sources and

26   nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be").

27        When rejecting a medical opinion as unsupported or inconsistent, the ALJ is required to

28   "provid[e] an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

United States District Court
Northern District of California

## 2.      Analysis

The ALJ's improper credibility determination likely impacted the ALJ's assessment of the medical opinion evidence.  In particular, the ALJ found that Dr. Weibe's opinion was unsupported because it was "based on the claimant's exaggerated assessments of her impairments."  AR 26.  The ALJ also found that Dr. Nickels's opinion was unsupported because it was based in part "on the claimant's migraines . . . which, as previously discussed, are not fully corroborated by the record."  AR 26.  As explained above, the ALJ improperly discredited Plaintiff's self-reported symptoms.

The ALJ also erred in other ways.  The ALJ stated that Dr. Wiebe "did not have access to the claimant's longitudinal medical history and had to rely on the claimant for her treatment history."  *Id.*  However, the record clearly indicates that Dr. Weibe reviewed Plaintiff's 2019-2021 treatment records from Bay Area Community Health Systems and from Washington Hospital Healthcare System before forming her medical opinion.  AR 722.  The ALJ mischaracterized this record.

In addition, regarding Dr. Nickels's opinion that Plaintiff would be absent from work four or more days per month, the ALJ found that there was "no explanation for this opinion, and it is not supported by the record."  AR 26; 740.  Specifically, the ALJ stated that the record "does not reflect a history of no-shows or cancellations."  AR 26.  But the ALJ failed to address the many explanations that Dr. Nickels did provide in her opinion, including Plaintiff's diagnosis of major depressive disorder, history of self-harm, isolating behaviors, fatigue, agitation and irritable mood, and chronic migraines.  AR 740-41.  The ALJ implies that a history of no-shows is the only evidence which can support a medical opinion that a claimant will be absent from work four or more days per month, which is incorrect.

The ALJ shall reconsider the medical opinion evidence on remand.  The court does not reach Plaintiff's arguments regarding Dr. Glantz and the state agency medical consultants.

//

//

//

13

## V.     CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted.  The Commissioner's motion for summary judgment is denied.  This matter is remanded for further proceedings consistent with this opinion.


**IT IS SO ORDERED.**

Dated: October 15, 2024

_____
Donna M. Ryu
Chief Magistrate Judge